BRENNAN, J.[1]
¶1 Arttistis B. Hall appeals from a judgment of conviction, entered on his guilty plea, for contempt of court.[2] He argues that the trial court erred when it denied his motion to withdraw his plea prior to sentencing, and he seeks plea withdrawal.
BACKGROUND
¶2 This case arises from a family law court custody and placement order. According to the complaint, a family court order had awarded physical placement of Hall's daughter, A.F., to him for half of each week and to her mother Emerald Flanagan for the other half. Hall refused to comply with the order. The complaint alleged that beginning on May 26, 2016, Hall had refused to tell Flanagan where A.F. was. On June 15, 2016, the family court dismissed the injunction Hall had requested to prevent contact between Flanagan and A.F., and the court ordered Hall to turn A.F. over to Flanagan. He did not. He was arrested and was released on June 17, 2016, without charges, after he agreed to comply with the existing court order. Once again, he did not. On July 12, 2016, the State learned that Hall was still not complying with the family court order and charged Hall with two felony counts of interference with child custody.
¶3 Pursuant to a plea agreement, Hall agreed to enter a guilty plea to one misdemeanor count of contempt of court. The State agreed to amend the first count, to dismiss and read in the second count, and to recommend an imposed and stayed sentence, with one year of probation and the condition that Hall comply with the family court orders.
¶4 At the plea hearing, the trial court reviewed the charge and the maximum penalty. The trial court asked Hall if he had gone over the jury instructions with his lawyer. Hall stated that he did not understand them. The trial court paused the proceedings for discussion off the record. When the hearing resumed, the trial court again asked if Hall had any questions about the jury instructions, and Hall answered that he did not.
¶5 The trial court continued with its careful questioning of Hall, stopping each time Hall hesitated in response to a question:
Trial court: And do you understand everything that's happening here today?
Hall: Yes, pretty much.
Trial court: Pretty much? You've got to understand it all. What's confusing you?
Hall: Well, I understand it all; probably don't agree with it.
Trial court: Okay. There's a difference-
Hall: -the situation, but I understand it.
Trial court: All right. There's a difference between not liking it and not understanding it. Do you understand what's happening?
Hall: Yes, I do, ma'am.
¶6 The trial court asked Hall whether he understood that he was giving up his right to a jury trial, the right to call witnesses, and the right to confront and cross-examine witnesses, and he answered each time that he did. The trial court asked if anybody had threatened or pressured him to enter the plea. He answered, "No, they did not." The trial court asked if Hall had read the criminal complaint and if the facts stated in the complaint were true. Hall answered yes to both questions. The trial court asked Hall to describe the crime:
Trial court: All right. Mr. Hall, what did you do that was the contempt of court, in your own words?
Hall: Withheld my daughter from the mother.
Trial court: All right. And there was a court order that granted her visitation?
Hall: Yes.
The trial court found that Hall entered his plea freely, voluntarily, and intelligently; that he understood the charge, penalties, and the rights he was giving up; and that there was a factual basis for the plea. The trial court found him guilty of contempt of court and convicted him.
¶7 On the day scheduled for sentencing, Hall asked to withdraw his plea based on alleged failures by his trial counsel to obtain court documents from the family court relevant to his defense. The trial court adjourned the hearing and gave Hall fourteen days to work with counsel.
¶8 At the adjourned hearing, trial counsel told the court[3] that he had "spent a great deal of time discussing this matter" and that trial counsel had "had the impression from [the] last conversation that it was resolved" and Hall wished to proceed to sentencing. Trial counsel then informed the court, "However, Mr. Hall has indicated that he still wants to withdraw his guilty plea in this case." As a result, trial counsel informed the court, he had no written motion prepared.
¶9 The State noted that the victim "keeps coming down here for sentencing" and requested the trial court set a deadline for a written motion.
¶10 The trial court had the following exchange with Hall about his plea withdrawal position:
Trial court: Mr. Hall, what's the situation here? Because I agree with the State. This is not a game. You don't get to drag the State or the victim or, for that matter, [trial counsel] through the mill every week or two and come back and say, "Well, I'm gonna withdraw my plea. No, I'm not." "Well, I'm gonna plead. Now I want to go to sentencing. No, I'm not." It's not a game.
Hall: I agree, Your Honor. There was no back and forth from the beginning. I did tell [trial counsel] that I want a jury trial. He would insist [on] doing a plea instead.
¶11 The trial court set a deadline for a written motion and scheduled a motion hearing.
¶12 Trial counsel filed the motion, alleging the following four reasons:
1. The defendant has been previously diagnosed with a learning disability.
2. The defendant contends that he was led to believe that he would be given an opportunity to try his case to a jury after he entered his plea.
3. The defendant contends that his attorney pressured him into pleading guilty.
4. The defendant asserts that he did not commit the crime to which he has entered his plea and that he has a valid and viable defense to the charges.
¶13 The motion also asked the court to permit Hall's trial counsel to withdraw. The trial court permitted counsel to withdraw, and successor counsel was appointed. Successor counsel then filed a supplemental motion to withdraw Hall's plea. This motion listed the following three reasons for plea withdrawal: (1) Hall alleged that he entered his plea "quickly and in confusion, and without adequate consultation" with trial counsel; (2) he alleged that he entered his plea "not voluntarily"; and (3) he asserted his innocence and "never admitted to any of the charges."
¶14 On January 12, 2017, the court heard argument on Hall's motion. The trial court informed the parties that it did not think "the Defense's motion establishes a factual basis" for plea withdrawal.
¶15 Hall's trial counsel told the court that the argument Hall was making in support of plea withdrawal was that "he just felt pressured to get out of jail and that's why he - why he went forward with the plea." Trial counsel informed the court that Hall acknowledged that the plea was voluntary and that he had no problem with his prior counsel:
[W]hat he's alleging is that he was - he did the plea; he did it while he was in jail to get out of jail; he felt like he - that he basically made the decision based on that; that he didn't actually do this [crime], he feels; and, yet, he - he signed that. He acknowledges that he signed it, that he did that voluntarily. He just felt pressured to get out of jail and that's why he - why he went forward with the plea. But he's saying he didn't do it.
He also said that when he got out of jail on the 28th of September, that he actually had told his attorney then, and the attorney took until October 11th [to file a plea withdrawal motion]. So it's a little bit earlier than what is asserted in here. So he has no problem with his prior counsel. That's really not the issue. It's more a personal decision that he made to get out of jail....
....
I think his argument is just under - the fair and just reason would be that he felt he was - that was unfair. That would be our argument.
¶16 The State argued that "there is no provision in the law to provide for 'I changed my mind because I wanted to get out of jail.' " The trial court agreed with the State: "No, there's no provision for that."
¶17 The trial court reviewed the plea hearing transcript line by line on the record. The trial court noted that it had allowed a recess when Hall indicated that he didn't understand something to give him the opportunity to discuss it with his attorney. The trial court observed, "I see no vacillation in [the transcript]." The trial court further noted that Hall "indicated that he is happy with [trial counsel]." After reviewing the transcript, the trial court concluded, "I have heard nothing that would be - rise to the level of allowing him to withdraw his plea." The motion was denied. This appeal follows.
Standard of review and relevant law.
¶18 We review a decision to grant or deny a presentencing motion to withdraw a plea for an erroneous exercise of discretion. State v. Lopez , 2014 WI 11, ¶60, 353 Wis. 2d 1, 843 N.W.2d 390. To sustain a discretionary act, this court needs only to find that the trial court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." Id. (quoting Loy v. Bunderson , 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982) ).
¶19 "[W]ithdrawal of pleas is not a matter of absolute right." Libke v. State , 60 Wis. 2d 121, 126, 208 N.W.2d 331 (1973). The legal standard "contemplates the mere showing of some adequate reason for the defendant's change of heart." Id. at 128. The defendant "must give some reason other than a desire to have a trial." Id. at 127. "[O]nce the defendant presents a fair and just reason, the burden shifts to the State to show substantial prejudice so as to defeat the plea withdrawal." Lopez , 353 Wis. 2d 1, ¶61.
¶20 "In general a circuit court should freely allow a defendant to withdraw his plea prior to sentencing for any fair and just reason, unless the prosecution [would] be substantially prejudiced."Id. , ¶2 (citations omitted; brackets in original). "But 'freely' doesn't mean automatically." State v. Canedy , 161 Wis. 2d 565, 582, 469 N.W.2d 163 (1991). State v. Jenkins addressed the "fair and just reason" standard as applied by the appellate courts, explaining that the burden is more difficult than it appears at first glance:
On the surface, the language and history of the fair and just reason standard suggest that a defendant is required to meet a relatively low burden to justify plea withdrawal before sentence. In actual application, however, the burden has been more difficult . Upon a motion to withdraw a plea before sentencing, the defendant faces three obstacles. First, the defendant must proffer a fair and just reason for withdrawing his plea . Not every reason will qualify as a fair and just reason. Second, the defendant must proffer a fair and just reason that the circuit court finds credible . In other words, the circuit court must believe that the defendant's proffered reason actually exists. Third, the defendant must rebut evidence of substantial prejudice to the State.
If the defendant does not overcome these obstacles in the view of the circuit court, and is therefore not permitted to withdraw his plea, the defendant's burden to reverse the circuit court on appeal becomes relatively high. This is so because, on appeal, the defendant has two additional and substantial obstacles. The first obstacle is the applicable standard of review, which requires the reviewing court to affirm the circuit court's decision unless it is clearly erroneous. The second obstacle is the extensive plea colloquy required of circuit courts. The plea colloquy is designed to secure a knowing, intelligent, and voluntary plea from the defendant and a developed record from which reviewing courts may evaluate the circuit court's decision.
Id. , 2007 WI 96, ¶¶43-44, 303 Wis. 2d 157, 736 N.W.2d 24 (emphasis added).
The trial court did not erroneously exercise its discretion when it denied Hall's motion because Hall did not proffer a "fair and just reason" for plea withdrawal.
¶21 Hall argues that the trial court erroneously exercised its discretion because it failed to apply the controlling legal standard. He argues that the trial court improperly focused on his statements during the plea colloquy rather than the reasons he gave for seeking to withdraw his plea. He argues that the trial court should have focused on the "pleadings-accompanied by his statements in open court" because these "demonstrate the existence of a 'fair and just reason' for plea withdrawal."
¶22 Hall argues that the following assertions constituted a fair and just reason: (1) his "repeated allegation that his lawyer pressured him to take the plea"; (2) the fact that he was under additional pressure "as a result of his ongoing incarceration while this case pended"; (3) his assertion that he is learning disabled and "appeared to have had some confusion about the court process"; and (4) his assertion that he "was adamant in his innocence and that he had an actual defense to present at trial." He argues that Libke 's requirement of "some adequate reason" for withdrawing a plea is satisfied by "[p]utting all of this together[.]"
¶23 As the record of the plea colloquy and the motion hearing makes abundantly clear, three of these reasons are unsupported in fact.
¶24 The allegation about pressure from trial counsel is unsupported. At the plea colloquy, the trial court asked Hall, "Are you happy with the way he's representing you?" And Hall answered, "Yes, I am." At a hearing following the first plea withdrawal motion, the trial court asked Hall whether he thought trial counsel had "tried to talk [him] into pleading[.]" Hall answered, "I believe just my misunderstanding of the whole papers and stuff is really the reason for signing. I don't think he coerced me. I won't say that." At the plea withdrawal motion hearing, where Hall was present, successor trial counsel told the court, "[Hall] has no problem with his prior counsel. That's really not the issue."
¶25 The allegation that Hall appeared to have "some confusion about the court process" is unsupported in the record. At the plea hearing, the trial court did an exceptional job of ensuring that Hall understood at each step how the plea process worked, and the trial court did not proceed until Hall had affirmatively expressed his understanding of each portion of the colloquy.[4] Trial counsel made a record to the trial court at the plea hearing about his efforts to explain the elements of the offense to Hall:
I met with Mr. Hall while he was in Milwaukee County jail. We spent a couple of hours going through this, and I - I tried to take it as slow as possible because I've been informed that Mr. Hall has some difficulty understanding legal forms and terms. And I do believe he understood everything.[5]
¶26 The allegation that Hall was "adamant in his innocence and had an actual defense to present at trial" is unsupported. At the plea colloquy he told the trial court that the facts alleged in the criminal complaint were true. He also told the trial court that he understood he was giving up his right to a jury trial and the right to call his own witnesses.
¶27 The sole remaining reason Hall offers for plea withdrawal is that he was under pressure because he was incarcerated while the case was pending. In his briefing to this court, Hall argues that pretrial incarceration is a factor the court should consider as a "fair and just reason" for plea withdrawal, and he cites to research that concluded that "defendants who are detained on a misdemeanor charge are much more likely than similarly situated releasees to plead guilty and serve jail time." See Paul Heaton et al., The Downstream Consequences of Misdemeanor Pretrial Detention , 69 Stan. L. Rev. 711, 717 (2017).
¶28 Our review of the trial court's denial of Hall's motion is not de novo. We review such a decision for erroneous exercise of discretion. See Lopez , 353 Wis. 2d 1, ¶60. As Jenkins made clear, the defendant's burden to reverse the trial court's denial on appeal "becomes relatively high." Id. , 303 Wis. 2d 157, ¶44. That case notes the "two additional and substantial obstacles": the applicable standard of review and the extensive plea colloquy required of trial courts. Id.
¶29 We conclude that those obstacles are fatal to Hall's appeal. When the trial court asked for argument at the motion hearing, Hall's successor counsel stated, "It's more a personal decision that he made to get out of jail.... I think his argument is just under - the fair and just reason would be that he felt he was - that was unfair. That would be our argument." In response, the State argued that that did not satisfy the standard: "[T]here is no provision in the law to provide for 'I changed my mind because I wanted to get out of jail.' " And the trial court agreed: "No, there's no provision for that." In the context of this exchange between the parties and the trial court about the fair and just reason, it is clear that the trial court was referring to the plea withdrawal standard.
¶30 We affirm unless the trial court's decision was clearly erroneous. See id. Hall's argument is that a defendant's desire to evade pretrial detention should be a factor in a "fair and just reason" analysis. But in this case, he is asking this court to go further than that and to hold that the trial court's failure to grant plea withdrawal for that reason was clearly erroneous. His argument does not overcome the standard of review.
¶31 The second appellate obstacle Jenkins identifies is the plea colloquy. This case illustrates the value of an "extensive plea colloquy" that "secure[s] a knowing, intelligent, and voluntary plea from the defendant and a developed record from which reviewing courts may evaluate the circuit court's decision." Id. Here, the record of the careful plea colloquy belies Hall's assertions that he was pressured by trial counsel, that he was confused about what the plea meant, and that he had never wavered from his assertion of innocence.
¶32 We therefore conclude that the trial court's denial of Hall's presentencing plea withdrawal motion was not an erroneous exercise of discretion.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The Honorable Janet Protasiewicz presided over the plea hearing and entered the judgment of conviction. Judge Protasiewicz presided over a hearing on Hall's motion to withdraw his plea prior to sentencing and denied the motion. The Honorable Michael J. Hanrahan sentenced Hall and denied Hall's postconviction motion for relief. Hall's notice of appeal states that he is appealing from the judgment of conviction entered on May 18, 2017 and from a written order denying his motion for postconviction relief entered on July 16, 2018. On appeal, Hall challenges only the denial of his motion for presentencing plea withdrawal, which occurred on January 12, 2017. We therefore do not address the denial of the postconviction motion further.

The Honorable David Borowski presided over the adjourned hearing but no other proceedings.

We note that the trial court was in the midst of a jury trial on the day of the plea hearing and nevertheless did not rush the plea hearing, pausing multiple times during the colloquy to follow up on responses from Hall.

The record reflects that at a postconviction hearing, Hall's trial counsel testified as follows when asked how he had explained the plea forms to Hall:
In very great detail, more detail than I would use with the average person.... I would imagine, just on the plea form alone, probably half an hour or forty minutes. The average person I probably spend maybe, depending just going through the plea form, not through the jury instructions, probably maybe ten minutes.